# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM F. MOHL, | : | No. 1:12-CV-00019 |
| Plaintiff, | : | Hon. John E. Jones III |
| v. | : | |
| COUNTY OF LEBANON, *et al.*, | : | |
| Defendants. | : | |

## **MEMORANDUM**

## **April 15, 2013**

Pending before the Court in this employment discrimination action is the Defendants' Motion for Judgment on the Pleadings. (Doc. 41). The Motion has been fully briefed and is ripe for our review. (Docs. 42, 44, 45). For the reasons that follow, we will grant the said Motion, as more fully articulated herein, and dismiss Plaintiff's Amended Complaint (doc. 23) with prejudice.

## I.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When, as here, the basis of the moving party's Rule 12(c) motion is that the plaintiff has allegedly failed to state a claim upon which relief can be granted, the motion is properly analyzed under the same

standard of review applicable to Rule 12(b)(6) motions to dismiss. *See Revell v. Port Authority*, 598 F.3d 128, 134 (3d Cir. 2010) ("A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.").

In considering a Rule 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. TIeman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must

identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this matter is known well to the parties and the Court and has not been substantially altered since the Court ruled on Defendants' Rule 12(b)(6) Motion to Dismiss (doc. 38) on February 27, 2013. Accordingly, we summarize only that background deemed pertinent to the instantly pending Motion and will supplement this summary as necessary throughout our analysis.

Plaintiff William F. Mohl ("Mohl" or "Plaintiff") is a fifty-six year old man who was employed by the Defendant County of Lebanon as a deputy sheriff at all times relevant. Mohl began his employment as a part-time deputy sheriff in December of 1999 and was promoted to a full-time deputy sheriff position in April of 2002. He performed satisfactorily throughout his career with the County. In April of 2009, Mohl suffered a heart attack and required surgery; as a result, he was hospitalized and out of work for four (4) weeks. Mohl applied for and was granted Family and Medical Leave Act ("FMLA") leave for this absence. Mohl alleges that when he returned to work after his leave, he was "treated differently and retaliated against" by Defendant Michael DeLeo, the County Sheriff and his

direct supervisor.

Specifically, Mohl alleges that soon after his return to work in August of 2009, DeLeo focused an escalating campaign of hostility toward him. DeLeo repeatedly cursed at Mohl and on more than one occasion threatened him with termination. DeLeo issued meritless discipline to Mohl on at least two occasions. Mohl was also denied training opportunities throughout this time. Further, DeLeo posted Mohl's FMLA leave request form on a bulletin board in the Sheriff's office and publicly discussed his medical condition with coworkers, causing Mohl great embarrassment. According to Mohl, this hostility was directed at him, and only at him, because of his use of FMLA leave.

Mohl thereafter filed grievances challenging the merits of the discipline that DeLeo issued. Mohl alleges that during a grievance hearing in November of 2010, DeLeo verbally attacked him, admitted to posting his FMLA form publicly, and posited that he can "do what [he] wants" without repercussion because he is an elected official. Immediately after that hearing, Mohl suffered a panic attack and was taken by ambulance to the hospital, where he was diagnosed with anxiety and depression and prescribed medication. Throughout the spring of 2011, Mohl's treating physician continually advised the County that Mohl was disabled as a result of stress and anxiety and that he would not be able to return to work until the

hostile work environment created by DeLeo was eliminated. The Amended Complaint is unclear as to when the Plaintiff ceased attending work. However, on July 5, 2011, the County sent Mohl a letter advising that his leave was about to expire and that failure to return to work would result in termination. On July 14, 2011, Mohl received a letter from the County terminating his employment, stating as its reason that he had failed to return to work after expiration of his leave.

Mohl thereafter pursued his administrative remedies, albeit unsuccessfully. On January 1, 2012, he initiated this action by filing a Complaint against the County and DeLeo, in addition to Defendants Desiree Nguyen and Melissa Light, the County's Director and Assistant Director of Human Resources. After several extensions of the usual time for filing the same, on September 4, 2012, Mohl filed an Amended Complaint (doc. 23) which asserted violations of the Americans with Disabilities Act ("ADA") (Count I), the Pennsylvania Human Relations Act ("PHRA") (Count II), the FMLA (Count III), and the Fourteenth Amendment (Count IV). On September 24, 2012, the Defendants again moved to dismiss all claims in their entirety.

In a memorandum and order (doc. 38) issued on February 27, 2013, we granted the Defendants' motion to the extent it sought dismissal of Mohl's ADA, PHRA, and Fourteenth Amendment claims and further to the extent it sought

dismissal of all claims against Defendants Nguyen and Light. With regard to the FMLA claims, we found that Mohl had pled no facts to support a claim of willful interference with FMLA rights and thus dismissed that claim. However, we held that the Amended Complaint did set forth enough facts to establish a *prima facie* case of retaliation and thus permitted Plaintiff to proceed on that theory against both DeLeo and the County, identifying the allegedly unwarranted discipline and denial of training opportunities as the adverse employment actions at issue. (*Id.*). The pleadings have now closed, and DeLeo and the County move the Court for judgment on the pleadings. (Doc. 41). The Motion has been fully briefed (docs. 42, 44, 45) and is thus ripe for our review.

## III. DISCUSSION

In the instant Motion, the Defendants assert that the remaining retaliation claim must be dismissed for two reasons: first, Defendants assert that Mohl has not pled that he suffered an adverse employment action sufficient to sustain an FMLA retaliation claim and, second, that Mohl has failed to plead damages or seek any remedy cognizable under the FMLA. In essence, they argue that regardless of the veracity of Mohl's allegations, there are no facts in the pleadings which causally connect an adverse employment action to a monetary harm. Because a review of the pleadings reveals that Mohl's claims indeed fail the damages component, we

will grant the Defendants' Motion.[1]

In an argument not explored by either party at the motion to dismiss stage, the Defendants posit that even if Plaintiff can prove his FMLA retaliation claim, which they maintain that he cannot, such violation did not result in any cognizable damages and must thus be dismissed. The Defendants' position is that Plaintiff has not pled damages which flow, in any way, from the issuance of discipline or the denial of training opportunities and that Plaintiff has thus failed to state a claim for which relief can be granted, warranting dismissal under Rules 12(b)(6) and 12(c). Our resolution of this issue turns on an analysis of what damages are contemplated by the Act and, specifically, whether the Act permits a plaintiff to collect either (a) front pay damages notwithstanding a valid termination or (b) the cost of treatment for stress-related medical conditions arising from the retaliatory conduct. A review

---

[1] As a threshold matter, we reject the Defendants' contention that Mohl has not pled that he suffered an "adverse employment decision" as defined by cases interpreting the FMLA. In ruling on the Defendants' motion to dismiss earlier this year, we acknowledged that DeLeo engaged in "a campaign of hostile threats, animosity, intimidation, and adverse employment actions" against Mohl by "denying him training opportunities, issuing meritless discipline, and belittling him in the presence of his coworkers." (Doc. 38, p. 22). Certainly, the totality of DeLeo's conduct, which commenced immediately after Mohl's return from FMLA leave, constitutes conduct which "well might have dissuaded a reasonable worker from taking a protected action." *Kasper v. County of Bucks*, 2013 U.S. App. LEXIS 3236, *14 (3d Cir. 2013) (applying *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Because the factual landscape since our ruling on this issue has not changed, neither will our decision. We thus affirm our holding that disparate disciplinary treatment and denial of training opportunities constitute adverse employment actions contemplated by the FMLA, and our conclusion that Mohl has sufficiently pled his *prima facie* case of retaliation remains unaltered.

of the Act's language in addition to the decisions of this and other district courts interpreting the same answers both inquiries in the negative.

The FMLA permits an employee to recover the following types of damages from an employer who violates the Act:

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee.

29 U.S.C. § 2617(a)(1)(A)(I). Courts may additionally assess liquidated damages up to the amount of lost wages, *see* § 2617(a)(1)(A)(iii), order reinstatement, *see* § 2617(a)(1)(B), and award attorneys fees, *see* § 2617(a)(3). Plaintiff here asserts that he is entitled to damages for lost wages subsequent to his termination and for the medical expenses incurred as a result of his panic attack, allegedly brought on by DeLeo's hostile conduct. The parties dispute whether Section 2617 permits a plaintiff to recover either of these two types of damages.

On both of these issues, this Court's decision in *Lapham v. Vanguard Cellular Systems*, 102 F. Supp. 2d 266 (M.D. Pa. July 5, 2000) is instructive. In *Lapham*, our colleague Judge William W. Caldwell considered, in the context of an

FMLA interference claim, whether an employee "can claim wages for periods subsequent to a lawful termination of employment." *Id.* at 268. There, the plaintiff used FMLA leave throughout her employment and was later lawfully terminated. *Id.* at 267. Lapham contended that because her employer had discouraged her from using leave at different times throughout her employment, she had suffered such stress so as to prevent her from seeking employment post-termination; she argued that the employer was liable, under the FMLA, for front pay from the date of her termination until the date that she secured another position. *Id.*

Judge Caldwell rejected the employee's arguments, concluding that because she was paid for her leave as required by the FMLA, she did not suffer lost wages until after her valid termination. In doing so, Judge Caldwell reviewed and relied upon the decisions of the only two district courts to previously address this distinct issue: the District Court for the Eastern District of Virginia in *Dawson v. Leewood Nursing Home,* 14 F. Supp. 2d 828 (E.D. Va. Aug. 5, 1998) and the District Court for the Northern District of Indiana in *Hite v. Biomet, Inc.*, 53 F. Supp. 2d 1013 (N.D. Ind. June 23, 1999). A review of *Dawson*, *Hite*, and *Lapham*, and the courts' respective rationales, is especially helpful and highly relevant here.

In *Dawson*, the plaintiff employee ("Dawson") took paid medical leave for intermittent periods. She eventually met with a supervisor to discuss the logistics

of returning to work, at which time she was asked if she would be interested in taking a less-stressful, newly-created position. At that time, she was advised that she would not be able to return to her previous position. Only days later, Dawson suffered severe cardiac and pulmonary symptoms which permanently disabled her. It was Dawson's position that her disability and the monetary losses resulting from it were the direct result of the employer's retaliatory conduct in not allowing her to return to her original post. She was granted leave under the FMLA as a result of her cardiac disability; however, when the employer notified Dawson that her leave was about to expire, she failed to return to work. The employer concluded that she had abandoned her job and thus terminated her. *Dawson*, 14 F. Supp. 2d at 830.

Dawson then brought an FMLA retaliation claim, asserting that the decision not to allow her to work in her original position was unlawfully retaliatory. She sought front pay damages, notwithstanding her lawful termination, on the basis that it was the employer's retaliatory conduct–refusing to return her to her old post–that caused the condition which had permanently disabled her and prevented her from obtaining gainful employment. In considering this argument, the court observed that neither the Act nor decisions interpreting its language support the proposition that medical damages caused by stress related to an FMLA violation are recoverable. *Id.* at 833. Ultimately, the court dismissed Dawson's FMLA claim,

finding that because she had not proven an "actual monetary loss sustained as a direct result of the [FMLA] violation," her claim was noncompensable and thus required dismissal. *Id.* at 834 (quoting § 2617(a)(1)(A)).

Similarly, in *Hite*, the employee ("Hite") failed to return to work or supply medical excuses to remain off work after her second FMLA leave of absence had expired; as in *Dawson*, the employer terminated her employment as a result. *Hite*, 53 F. Supp. 2d 1013, 1015-16. The court found that Hite had established a *prima facie* case of retaliation because she presented evidence that the employer treated her with hostility upon her return to work from her first period of FMLA leave, but that the employer's ultimate decision to terminate Hite when she failed to return from her second period of FMLA leave was lawful. *Id.* Acknowledging that Hite had established her *prima facie* case, the court denied the employer's motion for summary judgment; thereafter, the employer moved for reconsideration, asserting that even assuming an FMLA violation, Hite suffered no compensable damages. *Id.* at 1016. The court held that because "the lawful termination of the employment relationship extinguishes the mutual obligations of employer and employee," the plaintiff was not entitled to wage loss damages subsequent to her termination. *Id.* at 1026. In *Hite*, this holding was not fatal to the employee's claim because she had also suffered wage loss prior to the valid termination.

After comprehensively reviewing each of these cases and cross-referencing their rationales with the underlying policies of the FMLA, Judge Caldwell adopted their holdings, concluding that under the Act, "an employer's liability for damages arising from discriminatory conduct ends when the employer has a valid reason for an employment decision." *Lapham*, 102 F. Supp. 2d at 270 (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995)). Reasoning that the Act "clearly limits an employee's ability to recover damages to financial losses arising from the employment relationship," Judge Caldwell concluded that when the employment relationship is lawfully terminated, the potential for employer liability is likewise cut off. *Id.* Thus, because the end point for calculating liability for damages was reached when the employer terminated Lapham for failing to return to work, and because the employee had not pled or established that she otherwise suffered compensable damages during her employment, her claims were dismissed because no remedy existed. *Id.* at 270. In so holding, Judge Caldwell rejected Lapham's assertion that this result allows a violation of the Act to ultimately go unpunished by emphasizing that the purpose of the Act is not to punish employer wrongdoing but rather to compensate for financial losses arising from that wrongdoing. *See id*.

The case before us is a perfect hybrid of *Lapham*, *Hite*, and *Dawson* and begs a similar result. As in *Dawson*, our Plaintiff seeks damages for stress-related

medical expenses allegedly arising from DeLeo's retaliatory conduct. Specifically, Mohl asserts that his panic attack was brought on and/or exacerbated by DeLeo's hostility and expenses associated with that hospital visit are losses contemplated by the FMLA. In so arguing, however, Mohl points to no case law to support his contention that stress-related and other medical expenses resulting from an FMLA violation are compensable, and such a position is patently inconsistent with the weight of authority presently before the Court. Thus, consistent with the sound holdings of *Lapham* and *Dawson* which we adopt here in full, we conclude that these stress-related medical damages are not financial losses arising "directly from the employment relationship," *see Lapham*, 102 F. Supp. 2d at 279, and thus fail to support Mohl's FMLA retaliation claim.

Similarly, as in *Hite*, our Plaintiff seeks front pay damages from the date of his termination and going forward. However, as in *Hite*, the Plaintiff here has not pled–and even now does not argue–that his termination was unlawful, and thus his termination cannot trigger any front pay damages.  *See Lapham*, 102 F. Supp. 2d at 270 (holding that the end point for calculating employer liability for damages is reached when the employer lawfully terminated the employee for failing to return to work). Mohl has not argued at this or any juncture that his firing–the only event having potential to trigger front pay damages–was unlawful, and the pleadings,

which establish that Mohl was terminated for failing to return to work, give us no reason to independently reach that conclusion.[2] Accordingly, we hold that because Mohl's termination severed the employer-employee relationship, consistent with *Lapham* and *Hite*, front pay damages are unavailable.

In the interest of abundant caution, we review the Amended Complaint to determine whether Mohl has pled that he suffered *any* compensable wage or other monetary loss during his employment as a direct result of the adverse employment actions identified by the Plaintiff: disparate disciplinary treatment and denial of training opportunities. We cannot but conclude, after combing through the factual allegations of his pleading, that Mohl has failed to attribute any monetary loss to either of these two alleged FMLA violations. To assume such a loss on the facts presently before us would be strained speculation rather than reasonable inference, and we decline to do so. Thus, nothing about this case distinguishes it from the sound holdings of *Lapham*, *Hite*, and *Dawson*. In our view, like the handful of courts to address the issue before us, the language of the Act itself compels the conclusion that because Mohl suffered no compensable damages prior to his lawful

---

[2] In the Amended Complaint, Mohl lists as adverse employment actions only the Defendants' actions in "disciplining him, failing to accommodate his disability, [and] posting his FMLA and private medical information." (Doc. 23, ¶ 121). At no juncture in the twenty-three (23) paragraphs devoted to his FMLA claim and articulating his harms does the Plaintiff contend that his termination was unlawful or state facts which might otherwise support that inference. (*Id.* ¶¶ 163-186).

termination, he cannot obtain relief under the Act.

Lastly, Plaintiff argues that, regardless of whether he has pled lost wages or other compensable damages, he should be permitted to proceed to trial because Section 2617(a)(3) permits the Court to award attorneys fees. However, as Judge Caldwell observed in rejecting this same argument in *Lapham*, courts are and should be loathe to allow an action to proceed where the only relief sought is an award of attorneys' fees. *Lapham*, 102 F. Supp. 2d at 270 n.2. Indeed, as the *Dawson* court acknowledged:

> where it is established before trial that the plaintiff has no chance of recovering any damages, it would be highly unjust to the defendant and a waste of judicial resources to allow the case to proceed to trial merely so that the plaintiff can recover her attorneys' fees, which she would not have incurred if she had not pursued this claim.

*Dawson*, 14 F. Supp. 2d at 834. In our view, consistent with the views articulated in *Dawson* and *Lapham*, it would be an imprudent exercise to permit a plaintiff to continue to pursue an otherwise noncompensable claim solely so that he might accrue and collect attorneys' fees at the conclusion of the litigation. Thus, for these reasons, we reject Mohl's argument that his claim must proceed, whether or not compensatory damages are available, solely because the FMLA permits an attorneys' fee award at the conclusion of trial.

In sum, because Mohl suffered no wage loss prior to the lawful termination

of his employment, and because he has otherwise not pled any compensable loss directly attributable to his employment or the adverse employment actions he alleges, we are constrained to dismiss his FMLA claim notwithstanding the fact that the Amended Complaint otherwise appears to state a *prima facie* case of retaliation. The FMLA does not make nominal or symbolic damages available to plaintiffs, *see Gibson v. Lafayette Manor, Inc.*, 2007 U.S. Dist. LEXIS 99008, *78 (W.D. Pa. Mar. 5, 2007). Accordingly, where, as here, there have been no actual monetary losses incurred and the employee expressly concedes that equitable relief would be inappropriate, (doc. 44, p. 9), the Court is compelled to dismiss the claims for lack of a remedy. While we acknowledge that such a result may be perceived as harsh by discontented employees, "our holding must be based on the language of the statute, not on whether it yields a harsh result," *Lapham*, 102 F. Supp. 2d at 269, and in this instance, the language of the FMLA compels dismissal because Mohl has not suffered a monetary loss compensable by the Act.

## V. CONCLUSION

For all of the reasons articulated herein, the Court will grant the Defendants' Motion for Judgment on the Pleadings (doc. 41) and dismiss the remainder of the Plaintiffs' Amended Complaint (doc. 23) with prejudice for failure of a remedy recognized or contemplated by the FMLA. An appropriate order shall issue.